IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


GEORGE MILLER,                          )
                                        )
                        Plaintiff,      )
                                        )
            vs.                         )
                                        )
HARTFORD INSURANCE COMPANY OF THE       )
MIDWEST,                                )
                                        )        No. 3:10-cv-0068-HRH
                        Defendant.      )
_____ )



O R D E R

Motion for Summary Judgment

Defendant moves for summary judgment.[1]  This motion is opposed.[2]
Oral argument was requested and has been heard.

Facts

Plaintiff is George Miller.  Defendant is Hartford Insurance
Company of the Midwest.

On September 8, 2008, plaintiff was injured in a motor vehicle
accident.  Plaintiff sought treatment at Alaska Regional Hospital
and the Alaska Spine Institute for his injuries.  He also received
treatment from his primary care physician, Dr. Mueller, who is a

---

[1]Docket No. 36.

[2]Docket No. 39.

Case 3:10-cv-00068-HRH   Document 45   Filed 07/25/11   Page 1 of 22

Veterans Affairs (VA) physician.  Plaintiff complained of head and neck pain and was diagnosed as suffering from acute cervical strain, cervical spondylosis, and cervical pain.

On November 26, 2008, Dr. Johnston, at the Alaska Spine Institute, recommended physical therapy and tramadol for pain.[3] Dr. Johnston also noted that he and plaintiff "discussed cervical medial branch blocks; however, given the fact that [plaintiff] is on Coumadin, I think that this is not going to be a very viable option for us."[4]

Plaintiff was discharged from physical therapy in February 2009.  On February 17, 2009, Dr. Johnston advised Dr. Mueller that physical therapy had not been beneficial to plaintiff, that plaintiff's use of Coumadin limited any kind of injection therapy, and that "tramadol is very beneficial for him."[5]  Dr. Mueller, rather than Dr. Johnston, was to prescribe tramadol for plaintiff going forward.[6]

In May 2009, Dr. Levine at the Alaska Spine Institute saw plaintiff for "further evaluation with ongoing complaints of

---

[3]November 26, 2008 Treatment Note, Exhibit C at 3, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[4]Id.

[5]Letter from Shawn P. Johnston, M.D. to Jonathan P. Mueller at 10, Exhibit C at 10, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[6]Id. at 11.

cervical spine pain and headaches."[7]  Dr. Levine noted that plaintiff's CT report indicated "severe degenerative joint disease at C6-C7 with mild-to-moderate neural foraminal impingement bilaterally" and that his x-rays showed "spondylosis of cervical spine with degenerative disc disease at C6-C7."[8]  Dr. Levine stated that "we cannot pursue any type of injection techniques to try and give him some relief of his symptoms, unless he is able to taper off the current use of Coumadin for four to five days prior to the procedure."[9]  Plaintiff had been taken off Coumadin for other medical procedures in the past.[10]

Plaintiff was insured by defendant.  The medical payment provision in plaintiff's policy provided that defendant "will pay reasonable expenses incurred for necessary medical ... services because of bodily injury ... [c]aused by accident; and ... [s]ustained by an insured."[11]  The policy further provided that

---

[7]May 5, 2009 Evaluation, Exhibit C at 5, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[8]Id. at 7.

[9]Id. at 8.

[10]Deposition of George Miller at 30, lns. 22-24, Exhibit 8, Opposition to Motion for Summary Judgment, Docket No. 39.

[11]The Hartford Personal Auto Insurance Policy Alaska, Part B, ¶ A, Exhibit D at 3, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

defendant would "pay only those expenses incurred for services rendered within 3 years from the date of the accident."[12]

Defendant paid for plaintiff's medical expenses incurred as a result of the accident from December 24, 2008 through April 8, 2009. A total of $9,516.19 was paid for the treatment of plaintiff's injuries during that time.[13]

In late March-early April 2009, Rachel Weidner, the claim processor handling plaintiff's claim, began to be concerned that plaintiff's medical treatment was not related to the September 8, 2008 accident. Weidner testified that she decided to make inquiries as to whether plaintiff's treatment was still related to the accident after receiving the February 2009 letter from Dr. Johnston to Dr. Mueller, which indicated that conservative treatment was not helping plaintiff and which suggested that further treatment would be on an as-needed basis.[14] Weidner testified that she also had some concern because the medical records indicated that plaintiff may have suffered from cervical spondylosis prior to the accident.[15]

---

[12]Id. at 4.

[13]Letter from Weidner to Plaintiff (dated April 30, 2009) at 1, Exhibit G, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[14]Telephonic Deposition of Rachel Weidner at 42, ln. 6 - 44, ln. 3, Exhibit J, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[15]Id.

-4-

Thus, on April 8, 2009, Weidner sent a letter to Dr. Johnston in which she advised that

> [a]t this time, we need information to verify if the patient's current condition is directly resulting from the 9/8/08 auto accident. In addition, we also need to clarify ... whether or not this patient has reached maximum medical improvement for his symptoms relating to this accident.[16]

The letter asked whether "[i]n your medical opinion, are Mr. Miller's current complaint[s] a direct result of the 9/8/08 accident?" to which Dr. Johnston replied, "Yes, a permanent aggravation of a pre[-]existing condition."[17] The letter also asked, "Has Mr. Miller reached maximum medical improvement for this accident?" to which Dr. Johnston replied, "Yes."[18] Weidner testified that she understood maximum medical improvement (MMI) to mean that the medical treatment was no longer related to the underlying accident and that any treatment the insured was receiving for the accident was completed.[19] Weidner asked Dr. Johnston about MMI even

---

[16]Exhibit C at 16, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[17]Id. Plaintiff disputes that he had a pre-existing condition that was aggravated and cites to his testimony that he had only had one headache in his life prior to the accident. Miller Deposition at 35, lns. 14-25, Exhibit 8, Opposition to Motion for Summary Judgment, Docket No. 39.

[18]Exhibit C at 16, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[19]Weidner Deposition at 18, lns. 14-16, Exhibit J, Defendant Hartford Insurance Company of the Midwest's Motion for Summary (continued...)

though plaintiff's policy does not contain an MMI restriction and even though defendant has no documents that define the term.

Based on Dr. Johnston's response, Weidner determined that payment of future treatment would not be a med pay benefit. She reviewed this decision with her supervisor before advising plaintiff that defendant would not be paying for any more medical expenses.[20]

On April 30, 2009, Weidner telephoned plaintiff to advise him that defendant would not be paying any more of his medical expenses.[21] She noted that plaintiff

> became upset & stated that he is still in a lot of pain & g[oing] to therapy 6x a week that the VA is paying for. Expl[ained] to ins[ured], we are unable to pay for his care going forward & it appears the VA has taken responsibility for this. Ins[ured] adv[ised] he will get an att[orney] & then we will start talking about this. Ex[plained] to in[sured], MP does not pay for pain & suffering and only incurred medical costs.... Ins[ured] adv[ised] he thought [defendant] was on his side & will be hiring an att[orney].[22]

Weidner followed up the telephone conversation with a letter, in which she advised plaintiff that based on Dr. Johnston's response, defendant was "unable to consider any additional treatment as it

---

[19](...continued)
Judgment, Docket No. 36.

[20]Id. at 105, ln. 25 - 106, ln. 15.

[21]Adjuster's Log, Exhibit 7 at 1, Opposition to Motion for Summary Judgment, Docket No. 39.

[22]Id.

-6-

appears it is now directly related to your prior medical condition."[23] Plaintiff was also advised that "[i]f new information develops which you believe may affect our decision regarding the coverage available, please notify us immediately so we may consider [it]."[24] Plaintiff admitted at his deposition that he did not read this part of the letter.[25] But, plaintiff contends that he had no reason to advise defendant of any ongoing treatment since defendant had told him it would not pay for any such treatment.

Plaintiff thereafter continued to received medical care at the VA and continued to get tramadol and other medications as needed.[26] Plaintiff testified that he thought he was supposed to get some cortisone shots at the Alaska Spine Institute sometime after May 2009 and that he understood that he would have to stop taking Coumadin in order to have such treatment.[27] He testified that he did not ask Dr. Mueller at the VA about this treatment and that because he was not "happy about getting shots in [his] neck" he did not "get too upset" that the Alaska Spine Institute never called him

---

[23]April 30, 2009 Letter from Weidner to Plaintiff at 1, Exhibit G, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[24]Id.

[25]Miller Deposition at 36, ln. 13 - 38, ln. 1, Exhibit I, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[26]Id. at 41, ln. 19 - 42, ln. 4.

[27]Id. at 43, lns. 5-22, and 59, lns. 3-18.

back.[28]  But, plaintiff also testified that he "believe[d] that the Alaska Spine Institute had more to offer to help me."[29]

Defendant paid additional medical expenses for plaintiff after Weidner sent the April 30 letter and after plaintiff commenced this action on March 2, 2010.  Defendant compromised and paid a VA lien on September 30, 2010 and a $810.00 bill for physical therapy on April 11, 2011.[30]  At his deposition in January 2011, plaintiff admitted that he was not aware of any medical expenses that defendant had not paid, except for the bill for $810.00 for physical therapy,[31] which defendant has since paid.

Plaintiff asserts five claims against defendants:  1) a misrepresentation claim, 2) a violation of AS 21.36.125(a) claim, 3) a breach of contract claim, 4) a breach of the covenant of good faith and fair dealing claim, and 5) a negligent and/or intentional emotional distress claim.  Plaintiff seeks compensatory and punitive damages.  Defendant now moves for summary judgment on all of plaintiff's claims.

---

[28]Id. at 34, lns. 14-16.

[29]Miller Deposition at 59, lns. 9-10, Exhibit 8, Opposition to Motion for Summary Judgment, Docket No. 39.

[30]Affidavit of Jackie Peeden at 3, ¶¶ 7-8, Exhibit L, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[31]Miller Deposition at 54, lns. 5-8, Exhibit I, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

-8-

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

Plaintiff alleges that defendant falsely represented that there was a provision in his policy that precludes payment after an insured reaches maximum medical improvement.[32] It is not clear from

---

[32]Complaint at 4-5, ¶¶ 23 & 33, attached to Notice of Removal, Docket No. 1.

plaintiff's complaint whether this is a fraudulent or a negligent misrepresentation claim. The elements of a fraudulent misrepresentation claim are "a false representation of fact, scienter, intention to induce reliance, justifiable reliance, and damages." Barber v. Nat'l Bank of Alaska, 815 P.2d 857, 862 (Alaska 1991). The elements of a negligent misrepresentation claim are

> (1) "the party accused of the misrepresentation must have made the statement in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest," (2) "the representation must supply false information," (3) "there must be justifiable reliance on the false information supplied," and (4) "the accused party must have failed to exercise reasonable care or competence in obtaining or communicating the information."

Reeves v. Alyeska Pipeline Service Co., 56 P.3d 660, 670-71 (Alaska 2002) (quoting Bubbel v. Wien Air Alaska, 682 P.2d 374, 380 (Alaska 1984)).

Plaintiff's misrepresentation claim fails regardless of the type of misrepresentation claim it is, primarily because there is no evidence that defendant told plaintiff that there was a provision in the policy that precluded payment after an insured reaches maximum medical improvement. Weidner's April 30, 2009 letter to plaintiff advised that "there is medical payments coverage in the amount of $100,000 per person, available for reasonable medical and funeral services resulting from a bodily injury caused by an

-10-

accident."[33]  This language mirrors the language of plaintiff's insurance policy which provides that defendant "will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury ... [c]aused by accident; and ... [s]ustained by an insured."[34]  The letter does not state that there is a provision in plaintiff's policy relating to MMI.  Although plaintiff implies that defendant falsely stated that there was an MMI limitation in his policy, he has offered no evidence that shows that he was ever told this.  He was told that defendant had asked Dr. Johnston if he had "reached maximum medical improvement for this accident" and that Dr. Johnston had indicated that he had "reached maximum medical improvement for the 9/8/08 auto accident."[35]  But, there is no evidence that plaintiff was ever told that his policy contained an MMI limitation.

But even if plaintiff had been told that his policy had an MMI limitation, plaintiff's misrepresentation claim would still fail because there is no evidence that plaintiff relied on any statements about his policy to his detriment.  Plaintiff argues that the

_____

[33]Letter from Rachel Weidner to George Miller at 1, Exhibit G, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[34]The Hartford Personal Auto Insurance Policy Alaska, Part B, ¶ A, Exhibit D at 3, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

[35]Letter from Rachel Weidner to George Miller at 1, Exhibit G, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

-11-

evidence shows that he did not receive treatment that was recom-
mended by Dr. Johnston because he relied on defendant's statement
that it would no longer pay for his treatment because he had reached
MMI. Plaintiff testified that he

> was supposed to be going back to the Spine
> Institute, but somehow I got cut off from that
> and I don't know why.... [I]t seems to me it
> had something to do with being ... that they
> told me that I wasn't eligible for more cover-
> age. ... [T]hey told me that because I had a
> $100,000 coverage, that I wouldn't have any
> problem with getting the care that I needed.
> But then they quit giving me care at that point
> and I don't quite understand that.[36]

Plaintiff further testified that he "suspect[ed]" that he "got no
further help from" the Alaska Spine Institute "because of no more
money."[37] Plaintiff insists that there was further treatment that
the Alaska Spine Institute could have offered him, had he simply
stopped taking his Coumadin, which he had done in the past.

Plaintiff is correct that the evidence shows that he did not
get the shots that Dr. Johnston recommended. But, plaintiff's
testimony as to why this happened is inconsistent. Plaintiff
testified that he thought it was because of "no money" but that he
was also not quite sure why he never got the shots.[38] The court may

---

[36]Miller Deposition at 27, ln. 10 - 28, ln. 5, Exhibit 8,
Opposition to Motion for Summary Judgment, Docket No. 39.

[37]Id. at 52, lns. 2-6.

[38]Miller Deposition at 47, lns. 15-19, Exhibit I, Defendant
Hartford Insurance Company of the Midwest's Motion for Summary
(continued...)

-12-

disregard a party's testimony if it is internally inconsistent. Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The evidence also shows that the VA referred plaintiff back to the Alaska Spine Institute within days of the April 30 letter and that plaintiff continued to receive treatment for his pain from the VA, despite defendant's decision to stop paying medical expenses. Viewing the evidence in the light most favorable to plaintiff, no reasonable jury could find that plaintiff relied to his detriment on any misrepresentation about an MMI limitation in his policy. Defendant is entitled to summary judgment on plaintiff's misrepresentation claim.

Plaintiff next alleges that defendant violated AS 21.36.125,[39] which is Alaska's unfair claim settlement practices statute. Plaintiff's claim that defendant violated subsection (a) of this statute fails as a matter of law because subsection (b) expressly provides that "[t]he provisions of this section do not create or imply a private cause of action for a violation of this section." AS 21.36.125(b). Defendant is entitled to summary judgment on plaintiff's AS 21.36.125(a) claim.

---

[38](...continued)
Judgment, Docket No. 36.

[39]Complaint at 5, ¶ 34, attached to Notice of Removal, Docket No. 1.

Plaintiff also alleges that defendant has breached the insurance contract.[40] Plaintiff argues that defendant breached the insurance contract because it stopped paying for his medical treatment. He also complains that defendant did not pay some of his medical expenses until after he filed this action.

Plaintiff's breach of contract claim fails because defendant has paid all of the medical expenses that were submitted by plaintiff. Jackie Peeden, a claim representative for defendant, avers that defendant

> has paid or compromised and paid, as part of Plaintiff George Miller's medical payments coverage under his Hartford motor vehicle insurance policy, all medical expenses related to Plaintiff George Miller and his September 8, 2008, motor vehicle accident that Mr. Miller or his lawyer and any medical provider or lienholder has submitted to Hartford. To date, Hartford has paid $26,091.71 in medical expenses related to Mr. Miller's motor vehicle accident. There are no medical expenses incurred by Plaintiff related to the motor vehicle accident that have been submitted to Hartford that Hartford has not compromised and paid, or simply paid.[41]

As for plaintiff's complaint that defendant did not pay some of his medical expenses until he filed this lawsuit, the evidence shows that defendant did not receive the VA lien and supporting documents

---

[40]Complaint at 5, ¶ 35, attached to Notice of Removal, Docket No. 1.

[41]Peeden Affidavit at 2, ¶ 2, Exhibit L, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

-14-

and the $810 bill for physical therapy until after this action was filed.[42]  Defendant could not pay medical expenses that had not been submitted to it.  Plaintiff bought insurance so that his medical expenses would be paid if he were injured in an automobile accident.  Defendant fulfilled its end of the bargain by timely paying any medical expenses that were submitted.  Defendant is entitled to summary judgment on plaintiff's breach of contract claim.

Plaintiff also asserts intentional and negligent infliction of emotional distress claims against defendant.[43]  "An action for [intentional infliction of emotional distress] lies where: '(1) the conduct is extreme and outrageous, (2) the conduct is intentional or reckless, (3) the conduct causes emotional distress, and (4) the distress is severe.'"  Maddox v. Hardy, 187 P.3d 486, 497 (Alaska 2008) (quoting McGrew v. State, Dep't of Health & Soc. Servs., 106 P.3d 319, 324 (Alaska 2005)).  Negligent infliction of emotional distress "damages may only be awarded in certain narrow circumstances and only if the emotional distress is 'serious' or 'severe.'"  Hagen Ins., Inc. v. Roller, 139 P.3d 1216, 1219 (Alaska 2006) (quoting Kallstrom v. United States, 43 P.3d 162, 165 (Alaska 2002)).

---

[42]Id. at 3, ¶¶ 7-8.

[43]Complaint at 5, ¶ 37, attached to Notice of Removal, Docket No. 1.

-15-

There is no evidence to support a contention that plaintiff suffered severe emotional distress because of defendant's conduct. Plaintiff testified that he has not received any mental health counseling and has not received any medication for anxiety or other mental health issues since the accident.[44] Although plaintiff did testify that he "probably" had suffered emotionally since the accident, he also testified that he was not sure whose fault it was, although it might be defendant's fault.[45] Defendant is entitled to summary judgment on plaintiff's intentional and negligent infliction of emotional distress claims.

Plaintiff next alleges that defendant has breached the covenant of good faith and fair dealing that is implied in every insurance contract.[46] Under Alaska law, "while the tort of bad faith in first-party insurance cases may or may not require conduct which is fraudulent or deceptive, it necessarily requires that the insurance company's refusal to honor a claim be made without a reasonable basis." Hillman v. Nationwide Mut. Fire Ins. Co., 855 P.2d 1321, 1324 (Alaska 1993). Plaintiff argues that there was no reasonable basis for defendant to decide to stop paying for his treatment in

---

[44]Miller Deposition at 60, ln. 18 - 62, ln. 20, Exhibit I, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. I.

[45]Id. at 60, lns. 12-17.

[46]Complaint at 5, ¶ 36, attached to Notice of Removal, Docket No. 1.

-16-

April 2009. Plaintiff contends that he should not have had to file a lawsuit to force defendant to pay his medical expenses.

Defendant's April 2009 decision was reasonable. Based on Dr. Johnston's response to her inquiries and her understanding of MMI, Weidner determined that any further medical treatment that plaintiff would be receiving for cervical spondylosis was not related to the underlying accident. There was nothing inappropriate about Weidner using MMI as a tool to determine whether medical expenses were reasonable, necessary, and related. This case is somewhat similar to Hillman, 855 P.2d 1321. There, the insurance company denied a claim based on an explicit exclusion in the policy yet the plaintiffs argued bad faith because the insurance company "did not follow its standard procedures in denying coverage, ... it did not forward its attorney's letter to the Hillmans, and ... its $50,000 offer was conditioned on settling all of Hillmans' claims rather than their uninsured motorist claims." Id. at 1326. The Alaska Supreme Court held that these facts "do not suffice to create a fact question as to whether Nationwide's decision to deny coverage lacked a reasonable basis, as they have little or no relevance on that point." Id. Similarly here, defendant's internal policies and practices have little to no relevance to the issue of bad faith, particularly given that defendant has in fact paid all of plain-tiff's medical expenses which were submitted to defendant as related to the auto accident. The evidence in this case shows that

-17-

defendant investigated and paid plaintiff's medical expenses until it had information from plaintiff's physician which it interpreted to mean that future treatment could not meet the insurance policy's reasonable, necessary, and related requirement. The evidence also shows that defendant invited plaintiff to submit any additional information he had that indicated further treatment was needed, an invitation that plaintiff admits he did not read.

Plaintiff's arguments that there is evidence of bad faith are unavailing. Plaintiff contends that defendant did not communicate promptly with him but offers no evidence to support this contention. Plaintiff contends that defendant misrepresented policy provisions, but as discussed above, there was no misrepresentation here. Plaintiff complains that defendant did not investigate his claim after he told Weidner on April 30 that he was still having pain. He argues that his statements should have prompted defendant to get additional information from Dr. Johnston or request a medical review, which defendant did not do. But, the fact that plaintiff told defendant he was still having pain did not mean that defendant was required to do any further investigation. It is not the insurance company's responsibility to provide or procure medical treatment for its insured. If plaintiff thought he still needed treatment for his injuries, he could have sought that treatment and then provided the information to defendant, as defendant had invited him to do.

-18-

Plaintiff also contends that defendant had an unwritten practice of excluding claims by soliciting MMI determinations when policyholders had long-term residual symptoms. Plaintiff contends that this is evident by the "pervasive misuse" of the term "MMI" by adjusters. Plaintiff cites to Weidner's deposition testimony to support this contention. Weidner testified that she used the term when speaking with her supervisor and that she used the term fairly often when speaking with other adjusters.[47]

The court has already concluded that the relevant conduct here is Weidner's handling of plaintiff's med pay claim, not her handling of other insureds' claims and not the handling of other insureds' claims by other claim processors.[48] But even if this other conduct were relevant, plaintiff's contention that defendant had a policy of using MMI to avoid paying claims is not supported by the evidence. There is no evidence that defendant's claim processors were taught to follow this "unwritten policy". All the evidence shows is that Weidner used the term MMI when handling claims and talking with other claims processors.

Plaintiff also argues that there are questions of material fact as to whether defendant reasonably and promptly paid the VA for his

---

[47]Weidner Deposition at 20, ln. 12 - 21, ln. 21; and 82, ln. 4 - 83, ln. 7, Exhibit 5, Opposition to Motion for Summary Judgment, Docket No. 39.

[48]See Order re Motion for Protective Order at 1-2, Docket No. 29.

treatment.  But, the only evidence on this issue is to the contrary. Peeden avers that defendant received the VA lien and supporting documents on June 15, 2010, and that the lien was compromised and paid on September 30, 2010.[49]

Plaintiff's bad faith claim also fails because there is no evidence of damages.  Bad faith in the insurance context sounds in tort.  <u>State Farm Fire & Cas. Co. v Nicholson</u>, 777 P.2d 1152, 1156 (Alaska 1989).  "Thus, as with most tort claims, proof of actual damages is an essential element of a bad faith breach of an insurance contract claim."  <u>Nunn v. Mid-Century Ins. Co.</u>, 244 P.3d 116, 121 (Colo. 2010).

It is undisputed that plaintiff incurred no out-of-pocket expenses for any medical treatment resulting from the September 8, 2008 accident.  The evidence also shows that plaintiff suffered no interruption of treatment or medication after the April 30, 2009 decision.  Plaintiff has testified that he continued to go to the VA for medical care after he received defendant's April 2009 letter and that he continued to get Tramadol and his other medications from the VA.[50]  There is also no evidence of any emotional distress flowing from defendant's handling of plaintiff's claim.  Plaintiff

---

[49]Peeden Affidavit at 3, ¶ 7, Exhibit L, Defendant Hartford Insurance of the Midwest's Motion for Summary Judgment, Docket No. 36.

[50]Miller Deposition at 41, lns. 19-24, Exhibit I, Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment, Docket No. 36.

has testified that he cannot separate any emotional strain that he suffered because of the accident from any emotional strain he suffered as a result of defendant's conduct and that he has not received any mental health counseling or any medication for anxiety or other mental health issues since the accident.[51]

Plaintiff's argument that he can prove damages because he did not receive the treatment that was recommended by Dr. Johnston is meritless. As discussed above, it was not defendant's responsibility to see that plaintiff received the treatment recommended by Dr. Johnston. If plaintiff needed the treatment, he could have arranged for the treatment and it appears that the VA would have paid for the treatment. Moreover, the evidence shows that plaintiff went to the Alaska Spine Institute at least once after defendant had told him it would not pay for his medical expenses, which belies plaintiff's contention that he was "cut off" from treatment at the Alaska Spine Institute because of defendant's April 2009 decision.

In sum, defendant is entitled to summary judgment on plaintiff's bad faith claim. No reasonable jury could find that defendant did not have a reasonable basis for advising plaintiff in April 2009 that it was going to stop paying plaintiff's medical expenses. But even if defendant acted unreasonably, there is no evidence that plaintiff suffered any damages as result of defendant's April 2009 decision.

---

[51]Id. at 60, ln. 18 - 62, ln. 20.

-21-

Finally, defendant moves for summary judgment on plaintiff's request for punitive damages. Because all of plaintiff's claims are subject to dismissal, his request for punitive damages must be dismissed as well. DeNardo v. GCI Communication Corp., 983 P.2d 1288, 1292 (Alaska 1999) ("punitive damage claim cannot stand alone").

### Conclusion

Defendant's motion for summary judgment is granted. The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 25th day of July, 2011.

/s/ H. Russel Holland
United States District Judge

-22-